UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

| | |
|---|---|
| ROBERT ANEL DIAZ-MORALES, | |
|     Plaintiff, | |
|        v. | CIV. NO. 13-1360(PG) |
| SERGIO RUBIO-PAREDES, ET ALS., | |
|     Defendants. | |

<u>OPINION AND ORDER</u>

Before the court are co-defendants Sergio Rubio-Paredes and Emilio Arill-Garcia's motion to dismiss (Docket No. 11) and co-defendant Limaris Cruz-Velez's motion to dismiss (Docket No. 37), which co-defendants Rubio-Paredes and Arill-Garcia joined (Docket No. 39). For the reasons set forth below, the court **GRANTS IN PART AND DENIES IN PART** the defendants' motions.

**I. BACKGROUND**

On May 8, 2013, plaintiff Robert Anel Diaz-Morales (hereinafter "Plaintiff" or "Diaz-Morales") filed the instant action seeking compensatory damages against co-defendants police officer Limaris Cruz-Velez ("Cruz-Velez"), prosecutor Sergio Rubio-Paredes ("Rubio-Paredes"), supervising district attorney Emilio Arill-Garcia ("Arill-Garcia"), and other unknown defendants.[1] The present claim was brought pursuant to 42 U.S.C. § 1983 for alleged violations to Plaintiff's constitutional rights under the Fourth, Sixth,[2] Eighth and Fourteenth Amendments to the United States Constitution in connection with the investigation and prosecution of the murder of Kenia Rosario Viera ("Rosario"). <u>See</u> Docket No. 1. Plaintiff also invokes the court's supplemental jurisdiction over the claims arising from the alleged violations of his constitutional rights under Sections 7, 8 and 10 of Article II of the Commonwealth's Constitution and for damages under the Commonwealth's

---

[1] All defendants are sued in their individual capacity. <u>See</u> Docket No. 1.

[2] In his oppositions to both motions to dismiss, the Plaintiff stated that his claim under the Sixth Amendment was not plead in the complaint, and thus, requests that it be dismissed without prejudice. <u>See</u> Docket No. 26 at page 24; Docket No. 49 at page 6. The court hereby **GRANTS** the Plaintiff's request and dismisses this claim <u>without prejudice</u>.

tort statute, to wit, Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141. Id.

The facts of this case stem from the assault and murder of Rosario during the early dawn hours of October 23rd, 2001. The Plaintiff was eventually charged and found guilty of these crimes by a jury on November 13, 2003, Docket No. 1 at ¶ 4.9. This verdict was eventually vacated by the Supreme Court of Puerto Rico eight and a half years later, on May 9th, 2012, id. at ¶ 4.20. In fact, many of the facts alleged in the complaint stem from the Supreme Court of Puerto Rico's sentence, namely, Pueblo v. Robert Anel Diaz Morales, CC-2006-532 (PRSC May 9, 2012), of which we now take judicial notice.[3]

According to the complaint, Rosario's assailants woke her up while she was sleeping in her bedroom and then assaulted, handcuffed, sodomized and lit her on fire. See Docket No. 1 at ¶ 4.1. A neighbor took Rosario to the hospital, where she was found to have suffered extensive burns covering thirty five percent of her body and where she died a little over two months later. Id. Despite the fact that investigators were able to interview Rosario, the record is unclear as to whether it was actually two or three assailants that attacked Rosario. Id. at ¶¶ 4.2-4.3.

On October 31, 2001, a local store owner approached a police agent in Gurabo, Puerto Rico and informed the agent of possible suspects to the crime. Id. at ¶ 4.4. This informant identified Jose Luis Delgado a/k/a "Tony Caneca" and "Luis Caneca" (hereinafter "Delgado" or "Caneca"), an addict who had told the informant that he had been hired by Ismael Roman-Garcia ("Roman-Garcia") with two other persons to commit the crime. Roman-Garcia, described as being bald and one-handed, had a brief sentimental relationship with Rosario that ended shortly before her attack. Id. This information was relayed to co-defendant Cruz-Velez, who was the agent from the Puerto Rico Police Department ("PRPD") in charge of the investigation of this crime. Id. Consequently, the police identified Roman-Garcia as the principal suspect and intellectual author of the assault. Id.

Police agent Cruz-Velez interviewed Delgado several times. Id. at ¶ 4.5. He was then a twenty-six (26) year-old drug addict with a third grade special

---

[3]"Generally, in the federal system, '[t]he law of any state of the Union, whether depending upon statutes or upon judicial opinions, is a matter of which the courts of the United States are bound to take judicial notice without plea or proof.'" Getty Petroleum Marketing, Inc. v. Capital Terminal Co., 391 F.3d 312, 320 (1st Cir.2004) (citing Lamar v. Micou, 114 U.S. 218, 223, 5 S.Ct. 857, 29 L.Ed. 94 (1885); White v. Gittens, 121 F.3d 803, 805 n. 1 (1st Cir.1997)). See also Fed.R.Evid. 201(b).

education, who consumed between two and seven bags of heroin on a daily basis. Id. During the interviews, Delgado told Cruz-Velez that the main suspect, Roman-Garcia, another addict called Irving Daniel Carrasquillo (hereinafter "Carrasquillo") and a fellow known as "Prieto" were responsible for the crime. Nevertheless, Cruz-Velez later confirmed that "Prieto" did not exist, but was another nickname for Carrasquillo.

Later on, Caneca told Cruz-Velez that there was a fourth assailant known by the name of "Quenepo", who was also a heroin addict in the company of whom he would regularly consume drugs. See id. at ¶ 4.5. The complaint reveals that Caneca's account of events during his interviews were inconsistent due in large part to his addiction and consumption of controlled substances, heroin in particular. Id. Despite this, Caneca eventually became the prosecution's leading witness in the case. Id.

During the course of the investigation, the PRPD agents in charge of the crime scene were aware that the victim's cellular phone was never located at her home. Id. at ¶ 4.2. However, it was not until several days later, on November 9, 2001, that they tracked its signal. Id. at ¶ 4.6. Cruz-Velez called the victim's cellular phone number and when the Plaintiff answered, convinced him to meet with her. Id. At this time, the Plaintiff was a student at the University of Turabo, with no prior history of criminal proceedings or convictions, and no history of heroin use. The police questioned the Plaintiff about his possession of the victim's cellular phone, which the police occupied without any search warrant or legal justification to do so. Id. Moreover, Cruz-Velez and other agents at the scene questioned the Plaintiff without proper warnings, yet Diaz-Morales responded that he had purchased the phone from an addict for a price between $5 and $10. In fact, that same night, Diaz-Morales took Cruz-Velez to the front of the house where the sale of the phone had taken place and provided her with a description of the addict that sold him the phone. This addict turned out to be Carrasquillo. That night, Diaz-Morales was detained at the Caguas PRPD headquarters until a day later, when he was released with no charges filed. Id.

Several months thereafter, on August 28, 2002, the police arrested the Plaintiff and formally charged him of Rosario's assault and ultimate death despite his continuous cooperation during the investigation and despite having made himself available for fingerprinting, drug tests, hair and blood samples, as well as questioning. Id. at ¶¶ 4.6-4.7. What is more, Diaz-Morales was accused even though no forensic evidence existed tying him to the crime scene.

Id. at ¶ 4.7. Additionally, Plaintiff claims he was charged of assaulting and murdering Rosario without the legal required warnings and without allowing him to be accompanied by legal counsel. Id. at ¶ 4.7.

Plaintiff complains that Cruz-Velez had never been trained or was improperly trained to handle the compilation of evidence and the investigation of this case. Id. at ¶ 4.4. In addition, Diaz-Morales asserts that his mistaken accusation resulted from Cruz-Velez's intentionally and/or grossly negligent investigation, which she conducted in callous and reckless disregard and/or with deliberate indifference to his constitutional rights. Id. at ¶ 4.8.

According to Plaintiff, co-defendant Rubio-Paredes was the district attorney of the Puerto Rico Department of Justice (PRDOJ) in charge of the investigation, prosecution and trial against him. Plaintiff complains that Rubio-Paredes prosecuted him in disregard of his constitutional rights insofar as the evidence against him was inconsistent and incompatible with the forensic evidence gathered. Id. at ¶ 4.8. According to Diaz-Morales, Rubio-Paredes interviewed him several times in the presence of his own supervisor, co-defendant Arill-Garcia, and threatened him with filing charges against him if he didn't "tell the truth." Id. Moreover, Diaz-Morales contends that Cruz-Velez and Rubio-Paredes charged him with the crime despite knowing that another person in the area called Javier Francisco Sanchez-Gonzalez (hereinafter "Quenepo" or "Sanchez-Gonzalez") was known by the nickname "Quenepo" and had been seen several times consuming narcotics with the prosecution's lead witness, Delgado. Id. at ¶ 4.10.

On November 13, 2003, a jury convicted the Plaintiff of first degree murder, aggravated burglary and aggravated restriction of liberty based on the testimonies of witnesses Delgado and Cruz-Velez. Id. at ¶ 4.9. Notwithstanding, in a motion for new trial, the Plaintiff attached, after being able to obtain, an affidavit from Sanchez-Gonzalez dated September 9, 2005, wherein he admits he is known as "Quenepo" and states that Caneca had lied when the latter had identified the Plaintiff as the "Quenepo" that partook in the crime. Id. at ¶¶ 4.11-4.12. In 2005, Carrasquillo[4] sent to attorney Jose Lozada ("Lozada"), Director of the Special Investigations Bureau (known for its Spanish acronym as the "NIE"), an affidavit asserting Plaintiff's lack of responsibility for the crime and stating that the

---

[4] Carrasquillo was a witness for the defense during Plaintiff's trial and was later prosecuted by co-defendants Rubio-Paredes and Arill-Garcia. Id. at ¶ 4.5.

Plaintiff was not at the crime scene. Id. at ¶ 4.19. In addition, Mr. Rufino Cotto Martínez, who was sheltered at the NIE's Witness Protection Center from July 31, 2001 until September 19, 2003 with Delgado or "Caneca", sent another letter to Lozada stating under oath that he had overheard Delgado say that the defendants in this case had coerced him into lying by threatening to only prosecute him for the crime if he did not cooperate in the prosecution against the Plaintiff. Id. However, the investigation that ensued as a result of these letters was halted after co-defendant Rubio-Paredes replaced Lozada as the director of the NIE on June 6, 2006. Id.

The Plaintiff now alleges that prosecutor Rubio-Paredes and his immediate supervisor Arill-Garcia were aware at all times that their lead prosecution witness Delgado was lying, which, according to Plaintiff, evinces the deficient, grossly negligent, callously indifferent and malicious investigation and prosecution against him, in a conspiracy plot. Id. at ¶¶ 4.9, 4.13. Moreover, despite knowing the existence of another fellow by the nickname of Quenepo, co-defendants Cruz-Velez, Rubio-Paredes or Arill-Garcia never even attempted to summon Sanchez-Gonzalez for questioning or verified other relevant details related to all of the witnesses' statements. Id. at ¶¶ 4.15-4.16.

According to the Plaintiff, the defendants violated his constitutional rights insofar as the facts alleged in his complaint constitute an illegal seizure of a person, a wrongful arrest, false imprisonment, malicious prosecution, violation of substantive and procedural due process, perversion of the legal process to deprive him of his liberty, all of which are shocking to the conscience. Id. at ¶ 5.1.

Additionally, the Plaintiff sustains that the defendants who had supervisory duties during the course of the investigation and prosecution in the case against him are responsible to him for failing to protect him from the intentional and/or grossly negligent conduct of their subordinates. Id. at ¶ 6.1. According to Diaz-Morales, these defendants failed in their duties with respect to monitoring, supervising, training, evaluating, assigning and disciplining lower-level police agents and prosecutors. Id.

Finally, the Plaintiff alleges to have suffered extensive damages as a result of defendants' actions, which resulted in him being incarcerated for more than nine (9) years, and for which he should be indemnified pursuant to both federal and state law. Id. at ¶ 7.2.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that fails to state a claim upon which relief could be granted. "To avoid dismissal, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Garcia-Catalan v. U.S., 734 F.3d 100, 102 (1st Cir.2013) (quoting FED.R.CIV.P. 8(a)(2)). When ruling on a motion to dismiss for failure to state a claim, a district court must "ask whether the complaint states a claim to relief that is plausible on its face, accepting the plaintiff's factual allegations and drawing all reasonable inferences in the plaintiff's favor." Cooper v. Charter Communications Entertainments I, LLC, --- F.3d ----, 2014 WL 3623594, at *2 (1st Cir. July 23, 2014) (citing Maloy v. Ballori-Lage, 744 F.3d 250, 252 (1st Cir.2014)) (internal quotation marks omitted). Additionally, courts "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." A.G. ex rel. Maddox v. v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir.2013) (citing Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir.2011)).

"To cross the plausibility threshhold [sic], the plaintiff must 'plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Cooper, 2014 WL 3623594 at *2 (citing Maloy, 744 F.3d at 252). See also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, … , on the assumption that all the allegations in the complaint are true (even if doubtful in fact) … ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted).

"In resolving a motion to dismiss, a court should employ a two-pronged approach. It should begin by identifying and disregarding statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir.2011) (citing Twombly, 550 U.S. at 555) (internal quotation marks omitted). That is, the court "need not accept as true legal conclusions from the complaint or naked assertions devoid of further factual enhancement." Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir.2009) (citing Iqbal, 556 U.S. at 678). "A complaint 'must contain more than a rote recital of the elements of a cause of action,' but need not

include 'detailed factual allegations.'" <u>Rodriguez-Vives v. Puerto Rico</u>
<u>Firefighters Corps of Puerto Rico</u>, 743 F.3d 278, 283 (1st Cir.2014) (<u>citing</u>
<u>Rodríguez-Reyes v. Molina-Rodríguez</u>, 711 F.3d 49, 53 (1st Cir.2013)).
"Non-conclusory factual allegations in the complaint must then be treated as
true, even if seemingly incredible." <u>Ocasio-Hernandez</u>, 640 F.3d at 12 (<u>citing</u>
<u>Iqbal</u>, 556 U.S. at 681).

        "Determining whether a complaint states a plausible claim for relief will
… be a context-specific task that requires the reviewing court to draw on its
judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at 664-664.
Nevertheless, when evaluating the plausibility of a legal claim, a court may
not "attempt to forecast a plaintiff's likelihood of success on the merits;
a well-pleaded complaint may proceed even if … a recovery is very remote and
unlikely." <u>Ocasio-Hernandez</u>, 640 F.3d at 12-13 (<u>citing</u> <u>Twombly</u>, 550 U.S. at
556). As a result, courts should read the complaint "as a whole" and be
cautious not to apply the plausibility standard "too mechanically." <u>See</u>
<u>Rodriguez-Vives</u>, 743 F.3d at 283 (<u>citing</u> <u>Garcia-Catalan</u>, 734 F.3d at 101,
103).

### III. DISCUSSION

**A. Section 1983**

        Section 1983 "provides a remedy for deprivations of rights secured by the
Constitution and laws of the United States when that deprivation takes place
under color of any statute, ordinance, regulation, custom, or usage, of any
State or Territory." Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 924
(1982) (internal quotation marks omitted). To prevail in a Section 1983 claim,
a plaintiff "must allege facts sufficient to support a determination (i) that
the conduct complained of has been committed under color of state law, and
(ii) that [the alleged] conduct worked a denial of rights secured by the
Constitution or laws of the United States." Cepero-Rivera v. Fagundo, 414 F.3d
124, 129 (1st Cir.2005) (quoting Romero-Barceló v. Hernández– Agosto, 75 F.3d
23, 32 (1st Cir.1996)). For Section 1983 liability purposes, "a state employee
generally acts under color of state law when, while performing in his official
capacity or exercising his official responsibilities, he abuses the position
given to him by the State." West v. Atkins, 487 U.S. 42, 49, 108 S.Ct. 2250,
101 L.Ed.2d 40 (1988).

        Section 1983 claims require that a plaintiff establish three elements for
liability to ensue: deprivation of a right, a causal connection between the
actor and the deprivation, and state action. See Sanchez v. Pereira-Castillo,

590 F.3d 31 (1st Cir.2009); see also 42 U.S.C. § 1983. The causation element requires that the plaintiff establish (1) that the actions of the defendant deprived the plaintiff of a protected right, and (2) "that the defendant's conduct was intentional, grossly negligent, or amounted to a reckless or callous indifference to the plaintiff's constitutional rights." Concepción v. Municipality of Gurabo, 558 F.Supp.2d 149, 162 (D.P.R.2007). Moreover, a plaintiff must link each particular defendant to the alleged violation of federal rights. See González-Piña v. Rodríguez, 407 F.3d 425, 432 (1st Cir.2005). A plaintiff may do so by indicating any "personal action or inaction [by the defendants] within the scope of [their] responsibilities that would make [them] personally answerable in damages under Section 1983." Pinto v. Nettleship, 737 F.2d 130, 133 (1st Cir.1984).

In his complaint, the Plaintiff set forth claims of false arrest, false imprisonment, violations of his due process rights and malicious prosecution under different amendments to the United States Constitution. In their motions, the defendants have moved to dismiss all of Plaintiff's Section 1983 claims for failure to state a claim upon which relief could be granted. The court will analyze whether the four corners of the complaint hold a plausible Section 1983 claim for each of the different claims the Plaintiff has set forth.

### 1. Fourth Amendment Claims

#### a. False Arrest or False Imprisonment Claims

In his first cause of action, Diaz-Morales sustains that he has suffered damages as a result of his wrongful arrest and false imprisonment in violation of his rights under the United States Constitution, see Docket No. 1 ¶ 5.1. In their motion to dismiss, the defendants argue that the Plaintiff's allegations are more akin to a malicious prosecution claim because he was detained pursuant to legal process. See Docket No. 11 at page 17. Alternatively, defendants also argue that Diaz-Morales claims for false imprisonment or false arrest are time-barred.[5] See Docket No. 37 at pages 12-15. In response, the Plaintiff contends that the statute of limitations of his claim began to run when he was notified of his acquittal by the Supreme Court

---

[5]In particular, the defendants refer to the Plaintiff's allegations in ¶ 4.6 of the Complaint, where he claims that on November 9, 2001, co-defendant Cruz-Velez questioned him without proper warnings, seized his cellular phone without a warrant and detained him until a day later, as well as his allegations in ¶ 4.7 of the Complaint, where he sustains that on January 4, 2002, co-defendant Cruz-Velez requested that he submit to a drug test and threatened him with charges.

of Puerto Rico on May 9th, 2012. See Docket No. 49 at page 13. The Plaintiff, however, is mistaken.

The right to be free from false imprisonment and unjustified arrest and detention stems from the Fourth Amendment's protection against unreasonable searches and seizures. See Rodriguez v. Andreu Garcia, No. 03-2238, 2007 WL 1975005 at *4 (D.P.R. July 02, 2007) (citing Peña-Borrero v. Estremeda, 365 F.3d 7, 13 n. 8 (1st Cir.2004)). The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures … ." U.S. CONST. amend. IV. "The Amendment establishes a simple baseline, one that for much of our history formed the exclusive basis for its protections: When the Government obtains information by physically intruding on persons, houses, papers, or effects, a search within the original meaning of the Fourth Amendment has undoubtedly occurred." Florida v. Jardines, 133 S.Ct. 1409, 1414 (2013) (citing United States v. Jones, 132 S.Ct. 945, 950-951 (2012)(internal citations omitted)).

As it pertains to the defendants' contention that the Plaintiff's claims are only actionable in the context of a malicious prosecution claim, not a false arrest claim, we must make reference to the First Circuit Court of Appeals' holding in Harrington v. Nashua, 610 F.3d 24 (2010). Therein, the Court distinguished the cause of action of false imprisonment from the cause of action of malicious prosecution and stated that the tort of false imprisonment "arises out of 'detention *without legal process*,' … ." Harrington, 610 F.3d at 29 (citing Wallace v. Kato, 549 U.S. 384, 389 (2007)). Malicious prosecution, on the other hand, "remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process." Harrington, 610 F.3d at 29. "In other words, the commencement of a criminal case by the institution of legal process marks the dividing line between claims of false imprisonment and claims of malicious prosecution, making those species of claims legally separate and distinct." Id.

In the case at hand, the Plaintiff alleges he was illegally incarcerated at the Caguas Police headquarters on November 9, 2001 and released the following day. See Docket No. 1 at ¶ 4.6. He also claims to have been wrongly arrested and formally charged on August 28, 2002. Id. at ¶ 4.7. Therefore, the Plaintiff has set forth facts sustaining both a false imprisonment and a malicious prosecution claim, the latter being triggered by the institution of legal process on August 28th, 2002. However, pursuant to the applicable caselaw, the accrual of these separate claims differs.

In Puerto Rico, the statute of limitations for § 1983 claims is one year, which is the statute of limitations imposed on personal injury claims under state law. See Ayala-Sepulveda v. Municipality of San German, 671 F.3d 24, 29 n. 3 (1st Cir.2012) (citing Marrero-Gutiérrez v. Molina, 491 F.3d 1, 5 (1st Cir.2007) (citing P.R. Laws Ann. tit. 31, § 5298(2) (2009)). Notwithstanding, "[u]nlike the limitations period itself, the accrual date of a section 1983 claim is a matter of federal law … ." Harrington, 610 F.3d at 28. To that effect, the First Circuit has unequivocally held that "[t]he limitations period for a Fourth Amendment claim of false imprisonment begins to run when the false imprisonment ends; that is, when the putative plaintiff is either released or detained pursuant to legal process." Id. (quoting Wallace, 549 U.S. at 389; Mondragón v. Thompson, 519 F.3d 1078, 1082-83 (10th Cir.2008)).

As per the foregoing, we hereby hold that the Plaintiff's allegations sustaining his claim of false arrest stemming from his detention on November 9, 2001, as well as all other alleged unreasonable searches and seizures that took place prior to his arrest, such as the drug test performed on January 4, 2002, began to accrue at the time those events took place. See Nieves v. McSweeney, 241 F.3d 46, 52 (1st Cir.2001) (finding all Section 1983 claims based on officers' physical abuse or arrest of the plaintiffs accrued at the time those events occurred). See also Beck v. City of Muskogee Police Dep't, 195 F.3d 553, 558 (10th Cir.1999) ("Claims arising out of police actions toward a criminal suspect, such as arrest, interrogation, or search and seizure, are presumed to have accrued when the actions actually occur."). Pursuant to the applicable metrics, the Plaintiff's claims of false imprisonment and unreasonable detentions, searches and seizures are all time-barred.[6]

Accordingly, the co-defendants' motions requesting that Diaz-Morales' Fourth Amendment claims of false imprisonment and unreasonable search and seizure be dismissed is hereby **GRANTED**.

---

[6] The Plaintiff's fallback position in his response is that the events of November 9, 2001 and January 4, 2002 are part of a "continuous pattern of illegal activity and malicious investigation" by the co-defendants, which eventually led to his malicious prosecution. See Docket No. 49 at pages 12-13. Firstly, the Plaintiff has failed to reference any caselaw in support of his argument. Secondly, the court notes that in Harrington, the First Circuit rejected the plaintiff's identical argument that her claim was timely under a "continuing wrong" theory. See Harrington, 610 F.3d at 28. As such, the court will delve no further into this line of analysis.

### b. Malicious Prosecution Claim

As conceded by the defendants, the bulk of Plaintiff's allegations under Section 1983 make out a malicious prosecution claim in relation to the charges on which he was arrested in August 28, 2002. See Docket No. 11 at page 17.

In Hernandez-Cuevas v. Taylor, 723 F.3d 91 (1st Cir.2013), the First Circuit recognized Fourth Amendment malicious prosecution claims under Section 1983. It had long been implicit in this Circuit's caselaw that "it is 'self-evident' that 'those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit.'" Id. at 100 (citing Limone v. Condon, 372 F.3d 39, 44-45 (1st Cir.2004) (concluding that "the right not to be framed by law enforcement agents was clearly established in 1967")). But in Hernandez-Cuevas, the Court finally stated that it was "convinced that an individual does not lose his Fourth Amendment right to be free from unreasonable seizure when he becomes detained pursuant to judicial process." Id. at 100.

> Certainly, in most cases, the neutral magistrate's determination that probable cause exists for the individual's arrest is an intervening act that could disrupt any argument that the defendant officer had caused the continued unlawful seizure. … But, if a plaintiff can overcome this causation problem and demonstrate that law enforcement officers were responsible for his continued, unreasonable pretrial detention, the plaintiff has stated a constitutional injury that may be vindicated through a § 1983 action.

Id. (internal citations omitted).

In order to bring a Section 1983 malicious prosecution claim under the Fourth Amendment, a plaintiff shall establish that "the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." Hernandez-Cuevas, 723 F.3d at 101 (citation and quotation marks omitted). In fact, a claim of malicious prosecution accrues on the day that the proceedings terminate in the plaintiff's favor. See Hernandez-Cuevas, 723 F.3d at 96 (citing Wallace, 549 U.S. at 390)).

In their motion to dismiss, the prosecutor defendants Rubio-Paredes and Arill-Garcia argue that the Plaintiff is unable to successfully maintain a claim of malicious prosecution because he cannot establish that they acted with "actual malice" in the prosecution of Plaintiff. See Docket No. 11 at page 18. However, in Hernandez-Cuevas, the First Circuit adopted a "purely constitutional approach" rather than the "blended constitutional/common law

approach" adopted by other Courts of Appeals to the analysis of malicious prosecution claims, thereby eliminating malice as an element of such a claim. See id. at 100. "A plaintiff alleging a purely constitutional Fourth Amendment claim, on the other hand, usually need establish only that his seizure was objectively unreasonable." Id. at 99 (citing Sykes v. Anderson, 625 F.3d 294, 310-311 (6th Cir.2010) ("[T]he reasonableness of a seizure under the Fourth Amendment should be analyzed from an objective perspective, which, even in the context of malicious-prosecution claims, renders irrelevant the subjective state of mind of the defendant [.]")). In light of the First Circuit's holding, we must reject the defendants' argument.

In the second motion to dismiss, the defendants seek dismissal of the Plaintiff's malicious prosecution claim on grounds of res judicata or collateral estoppel. See Docket No. 37. Essentially, the defendants argue that the Plaintiff should not be afforded a second chance to litigate the claim that the defendants coerced witnesses into giving false testimony in the course of the Plaintiff's criminal prosecution. According to the defendants, the Commonwealth's Court of First Instance's Resolution of January 24, 2008, denying the Plaintiff's post-conviction motion for a new trial, "stands as the valid and final judgment on the issue of coerced false testimony and/or of PRPD and prosecuting attorney misconduct." Docket No. 37 at page 25. But the defendants entirely misunderstand the application of issue or claim preclusion: the Commonwealth court could not have considered – or ruled – on this issue in the context of the Plaintiff's malicious prosecution claim, because this claim only accrued upon his acquittal four years later on May 9th, 2012. That is, the Plaintiff's claim for malicious prosecution had not been born at the time of this Resolution. Needless to say, the defendants' argument fails.[7]

In accordance with the foregoing discussion, the defendants' request that the Plaintiff's malicious prosecution claim be dismissed for failure to state a claim upon which relief can be granted is hereby **DENIED.**

### i. Prosecutorial Immunity (Absolute Immunity)

We shall now move on to discuss whether absolute immunity bars the Plaintiff's claims of malicious prosecution against the prosecuting officers, namely, co-defendants Rubio-Paredes and Arill-Garcia.

---

[7]It is difficult to say with certainty whether the defendants bring this argument under misapprehension or merely as a flight of creative argumentation. What is certain is that the defendants should refrain from wasting the finite resources of the court.

"Absolute immunity applies to a narrow swath of public officials, including … 'prosecutors performing acts intimately associated with the judicial phase of the criminal process,' … . " Goldstein v. Galvin, 719 F.3d 16, 24 (1st Cir.2013) (citations omitted). For example, "[p]rosecutors … are absolutely immune for actions, taken as advocates for the State, which are closely associated with the judicial process such as initiating and pursuing a criminal prosecution." Knowlton v. Shaw, 704 F.3d 1, 5 (1st Cir.2013) (citing Imbler v. Pachtman, 424 U.S. 409, 430–31 & n. 33 (1976); Burns v. Reed, 500 U.S. 478, 479 (1991)). "The protection afforded by an absolute immunity endures even if the official acted maliciously and corruptly in exercising his judicial or prosecutorial functions." Goldstein, 719 F.3d at 24 (internal citations and quotation marks omitted).

"In determining whether an official qualifies for absolute immunity, an inquiring court must examine the particular functions that the official performs." Goldstein, 719 F.3d at 24 (citing Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993)). That is, in considering whether absolute immunity attaches to an official's conduct, we look to the nature of the function performed, not the identity of the actor who performed it. See Knowlton, 704 F.3d at 5 (citations omitted). The burden of proving their actions warrant that protection falls on the officials claiming the immunity. See id.

In their motions to dismiss, the prosecuting co-defendants, Rubio-Paredes and his supervisor Arill-Garcia, sustain that the defense of absolute immunity precludes the claims raised against them. See Docket No. 11 at pages 9-12. In his opposition, the Plaintiff contends that absolute immunity is unavailable to these co-defendants and they are not immune from suit for their activities in connection with the investigation that led to the filing of charges against him. See Docket No. 26 at pages 20-24.

Diaz-Morales is correct in pointing out that "[a]bsolute immunity, however, is not available to either prosecutors or agency officials whose actions are primarily administrative or investigative in nature and unrelated to their functions as advocates in preparing for the initiation of a prosecution or for judicial proceedings." Knowlton, 704 F.3d at 5 (citing Buckley, 509 U.S. at 273; Burns, 500 U.S. at 495 (no absolute immunity for prosecutor providing legal advice to police regarding interrogation practices)). "Prosecutors acting as advocates of the state are provided with absolute immunity, while actions taken as an investigator are only protected

through qualified immunity." <u>Diaz-Colon v. Toledo-Davila</u>, 922 F.Supp.2d 189, 207 (D.P.R. 2013) (<u>citing</u> <u>Buckley</u>, 509 U.S. at 273).

"The functional analysis, however, requires us to draw a line between preparatory conduct that is merely administrative or investigative, and that which is itself prosecutorial. For example, some, but not all, of the prosecutor's preparatory acts in initiating a prosecution and presenting the State's case are absolutely immune." <u>Guzman-Rivera v. Rivera-Cruz</u>, 55 F.3d 26, 29 (1st Cir.1995) (<u>citing</u> <u>Imbler</u>, 424 U.S. at 431 n. 33; <u>Burns</u>, 500 U.S. at 492-96 (no absolute immunity for prosecutor's legal advice to police that there was probable cause for an arrest); <u>Buckley</u>, 509 U.S. at 272-276 (no absolute immunity for prosecutors' conspiracy to manufacture false evidence that was later introduced at grand jury proceedings and at trial, or for a prosecutor's out-of-court statements to the press)). Therefore, unlike the prosecuting officers would have us hold, "[t]he prosecutorial nature of an act does not spread backwards like an inkblot, immunizing everything it touches." <u>Guzman-Rivera</u>, 55 F.3d at 29 (<u>citing</u> <u>Burns</u>, 500 U.S. at 495 ("Almost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the ultimate decision whether to prosecute, but we have never indicated that absolute immunity is that expansive.")).

In their motion, the prosecuting defendants aver that when they filed charges against the Plaintiff, they were "acting upon the investigation of Agent Cruz, and the testimony of Delgado … ." Docket No. 11 at page 11. However, the allegations supporting the Plaintiff's malicious prosecution claim against them reflect otherwise; to wit, that the Plaintiff's theory of liability stems from Rubio-Paredes and Arill-Garcia's unlawful actions during the investigative phase of the proceedings against Diaz-Morales.

After careful review of the complaint, the court finds that the Plaintiff has properly alleged a violation of his Fourth Amendment right to be free from malicious prosecution stemming from Rubio-Paredes and Arill-Garcia's involvement during the investigation of the charges that were eventually filed against him. Specifically, according to the Plaintiff, both prosecutors were present during some of his interviews along with agent Cruz-Velez, <u>see</u> Docket No. 1 at ¶ 4.7, and Rubio-Paredes himself interviewed him several times, <u>id.</u> at ¶ 4.8. Moreover, Diaz-Morales alleges that Arill-Garcia was present during his interviews with Rubio-Paredes, at which Rubio-Paredes threatened him with charges if the Plaintiff did not identify his other accomplices in the

perpetration of the acts he was accused of. Id. This despite the fact that the forensic evidence excluded the Plaintiff from the crime scene. Id. Moreover, the Plaintiff set forth allegations that he uncovered evidence that the defendants, including the prosecutors, prompted the lead witness, Delgado, to lie during the criminal proceedings against the Plaintiff and prepared him for trial. Id. at ¶ 4.19. Hence, the Plaintiff alleges the prosecutors were aware of the falsity of the charges against him.  Id. at ¶ 4.13.

The well-pleaded facts in the complaint, from which we draw all inferences in the Plaintiff's favor, establish that both prosecuting officials, especially Rubio-Paredes, interviewed the Plaintiff as one of the suspects of the crime, as well as Delgado, the main witness they would use against him. The Plaintiff also alleges, and we must accept as true, that these co-defendants instigated both the Plaintiff and Delgado to lie under threat, and the latter did.

As the Supreme Court noted in Buckley, "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." Buckley, 509 U.S. at 273. In light of the applicable caselaw, the prosecutor officials in this case, namely, co-defendants Rubio-Paredes and Arill-Garcia, may only be entitled to qualified immunity for the allegations raised against them.[8] See id. at 275 (finding that a prosecutor's fabrication of false evidence during preliminary investigation of unsolved crime remains protected only by qualified immunity).

Consequently, co-defendants Rubio-Paredes and Arill-Garcia's motion to dismiss based on absolute immunity is **DENIED**.

### ii. Supervisor Liability

In their motion to dismiss, the defendants also argue that the claims against the prosecutors should be dismissed because the allegations against

---

[8]The section in their motion to dismiss wherein co-defendants Rubio-Paredes and Arill-Garcia claim to be immune from suit on grounds of both absolute and qualified immunity. See Docket No. 11 at page 8. The latter "protects public officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Penn v. Escorsio, --- F.3d ----, 2014 WL 4177376, at *6 (1st Cir. August 22, 2014) (citations omitted). However, as noted by the Plaintiff in his response, see Docket No. 26 at page 21, the co-defendants fail to discuss the defense in their memorandum of law. "Judges are not mind-readers, so parties must spell out their issues clearly, highlighting the relevant facts and analyzing on-point authority." Rodriguez v. Mun. of San Juan, 659 F.3d 168, 175 (1st Cir.2011). Because co-defendants' brief is devoid of any arguments in support of this theory, the court will not analyze the issue any further. See U.S. v. Zannino, 895 F.2d 1, 17 (1st Cir.1990) (holding litigant has the "obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.").

them are conclusory and supervisory liability does not attach in light of their lack of participation in any event that led to a constitutional violation. See Docket No. 11 at pages 19-22.

"[S]upervisory liability under section 1983 cannot arise solely on the basis of respondeat superior." Grajales v. Puerto Rico Ports Authority, 682 F.3d 40, 47 (1st Cir.2012) (citing Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 502 (1st Cir.2011)). "Section 1983 does not impose purely supervisory liability; it aims at persons who have actually abused their positions of authority, and hence only persons who were directly involved in the wrongdoing may be held liable." Cordero-Suarez v. Rodriguez, 689 F.3d 77, 82 (1st Cir.2012) (internal citations and quotation marks omitted).

Therefore, in the context of Section 1983 actions, supervisory liability may attach in one of two ways: "either the supervisor may be a primary violator or direct participant in the rights-violating incident, or … if a responsible official supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation." Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir.2009) (internal citations and quotation marks omitted).

> In the latter scenario, relevant here, the analysis focuses on whether the supervisor's actions displayed deliberate indifference toward the rights of third parties and had some causal connection to the subsequent tort. … In either case, the plaintiff in a Section 1983 action must show an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization, … between the actor and the underlying violation.

Sanchez, 590 F.3d at 49 (internal citations and quotation marks omitted).

Nevertheless, "[a]fter Iqbal, … we have stressed the importance of showing a strong causal connection between the supervisor's conduct and the constitutional violation." Ramirez-Lluveras v. Rivera-Merced, 759 F.3d 10, 19 (1st Cir.2014) (citations omitted)). In addition, "the plaintiff must show that the official had actual or constructive notice of the constitutional violation." Feliciano-Hernandez v. Pereira-Castillo, 663 F.3d 527, 533 (1st Cir.2011) (citations and quotation marks omitted).

In his second cause of action, the Plaintiff holds liable all identified and unidentified defendants who were supervisors during the course of his investigation and prosecution for their deliberate indifference towards their subordinates' violations of his constitutional rights and for failing to

monitor, supervise, train and discipline their subordinates. <u>See</u> Docket No. 1 at ¶¶ 6.0-6.3. The only named defendant in the Plaintiff's complaint who is held liable for his actions in the exercise of his supervisory duties is co-defendant Arill-Garcia as "the highest and immediate supervising prosecutor of RUBIO PAREDES in the Humacao District Attorney's Office … ." Docket No. 1 at ¶ 2.5. The allegations against Arill-Garcia specify that he was present during some of the interviews that both Cruz-Velez and Rubio-Paredes took, and was thus aware of the malicious prosecution against Plaintiff. <u>Id.</u> at ¶¶ 4.7-4.9, 4.13.

In light of these allegations, the court finds that Diaz-Morales has pleaded a plausible claim of deliberate indifference on the part of Arill-Garcia as supervisor of Rubio-Paredes. Taking the facts alleged as true, the court can reasonably infer that by failing to take any measures to rectify Rubio-Paredes' conduct, Arill-Garcia knowingly allowed the latter to wrongly prosecute the Plaintiff by suborning false testimony.

Thus, at this stage of the proceedings, the court **DENIES WITHOUT PREJUDICE** co-defendant Arill-Garcia's motion to dismiss on grounds of lack of supervisory liability.

### iii. Conspiracy

In their motions to dismiss, the defendants contend that the Plaintiff's allegations that the defendants conspired to deprive him of his constitutional rights are simply conclusory and are thereby insufficient to sustain a plausible claim that would entitle him to relief. See Docket No. 11 at pages 22-24; Docket No. 37 at pages 25-27. Diaz-Morales opposes their request. See Docket No. 26; Docket No. 49.

A civil rights conspiracy under Section 1983 is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." Estate of Bennett v. Wainwright, 548 F.3d 155, 178 (1st Cir.2008) (citing Earle v. Benoit, 850 F.2d 836, 844 (1st Cir.1988)). "In order to make out an actionable conspiracy under section 1983, a plaintiff has to prove not only a conspiratorial agreement but also an actual abridgment of some federally-secured right." Nieves, 241 F.3d at 53 (citations omitted).

In the case at hand, the constitutional deprivation was the Plaintiff's right to be free from being maliciously prosecuted under the Fourth Amendment.

To that effect, the Plaintiff sustains in his opposition that the complaint contains allegations reflecting that Rubio-Paredes, Arill-Garcia, and Cruz-Velez's investigation targeted him and that each defendant personally concerted actions that lead to his wrongful and illegal incarceration. In particular, the Plaintiff makes reference to the fact that the prosecutor co-defendants were personally and directly involved in the investigation, during which they conducted several interviews and instructed agent Cruz-Velez on the scope or limit of her investigation. See Docket No. 26 at pages 29-30; Docket No. 49 at pages 20-22. The court notes that the Plaintiff also alleges that defendants acted in concert to intimidate Delgado into lying against the Plaintiff.

The court finds that the Plaintiff's complaint exhibits, within its four corners, a plausible claim that these co-defendants acted in cahoots during the criminal investigation of Plaintiff to illegally procure false testimony against him by means of threats. "This circumstantial evidence is sufficient to make for a plausible inference that a conspiracy existed between these defendants to generate false testimony to use against the plaintiffs." Diaz-Colon, 922 F.Supp.2d at 207 (citing Villafaña-Rivera v. Toledo-Davila, No. 10-2079, 2011 WL 5873072, at *8 (D.P.R. Nov. 21, 2011) (finding that even though many of the allegations of conspiracy were conclusory, an allegation that there was a code of silence to lie about police beatings was sufficient to withstand a motion to dismiss)).

Consequently, we conclude that the Plaintiff has stated sufficient facts for a claim of conspiracy to survive a motion to dismiss with respect to co-defendants Cruz-Velez, Rubio-Paredes and Arill-Garcia. Their motions to dismiss the conspiracy claims are therefore **DENIED.**

**2. Fourteenth Amendment - Due Process Claims**

The Plaintiff alleges that the co-defendants' alleged actions violated his substantive and procedural due process under the Fourteenth Amendment to the United States Constitution. See Docket No. 1 at ¶ 5.1. In their motions, the co-defendants move to dismiss this claim on grounds that the Due Process Clause cannot serve as the basis for his malicious prosecution claim. See Docket No. 11 at pages 14-16; Docket No. 37 at pages 10-12. The court agrees with the defendants.

The Due Process Clause protects against deprivation of life, liberty, or property without the due process of law. U.S. CONST. amend. XIV. "That due process right has both a procedural and a substantive component … ." Parker

v. Hurley, 514 F.3d 87, 101 n. 14 (1st Cir.2008). However, the First Circuit
Court of Appeals has held that a plaintiff's Section 1983 malicious
prosecution claim, as the case is here, "is not properly based on either a
procedural or substantive due process violation." Meehan v. Town of Plymouth,
167 F.3d 85, 88 (1st Cir.1999).

"A § 1983 claim for malicious prosecution as a deprivation of procedural
due process is barred where, as here, the state's tort law recognizes a
malicious prosecution cause of action." Id. (quoting Roche v. John Hancock
Mutual Life Ins. Co., 81 F.3d 249, 256 (1st Cir.1996); Perez-Ruiz v.
Crespo-Guillen, 25 F.3d 40, 42-43 (1st Cir.1994)). See also Montalvo Febus v.
Sanchez, No. 11-1428(GAG), 2013 WL 6628299, at *5 (D.P.R. December 16, 2013)
([T]he availability of an adequate remedy for malicious prosecution under
Commonwealth law, see P.R. LAWS ANN. tit. 31, § 5141 (1991), is fatal to
Plaintiff's procedural due process claim."). In addition, the Supreme Court's
opinion in Albright v. Oliver, 510 U.S. 266 (1994), firmly closed the door on
substantive due process as a vehicle for bringing claims of malicious
prosecution. See Hernandez-Cuevas v. Taylor, 723 F.3d 91, 98 (1st Cir.2013).

Because as was discussed *supra*, the Plaintiff's malicious prosecution
claim falls within the purview of the Fourth Amendment, the court **GRANTS**
defendants' request that the Plaintiff's Fourteenth Amendment claims be
dismissed.

### 3. Eighth Amendment Claims

In the complaint, Diaz-Morales mentions in passing violations to his
rights under the Eighth Amendment. See Docket No. 1 at ¶¶ 1.1, 3.1. The
defendants seek to dismiss this claim arguing the Plaintiff failed to
substantiate . See Docket No. 11 at pages 13-14; Docket No. 37 at pages 9-10.
The court agrees.

The Eighth Amendment provides: "Excessive bail shall not be required, nor
excessive fines imposed, nor cruel and unusual punishments inflicted." U.S.
CONST. amend. VIII.  The Eighth Amendment is specifically concerned with the
unnecessary and wanton infliction of pain in penal institutions, see Whitley
v. Albers, 475 U.S. 312, 327 (1986), and thus, does not apply until "after
sentence and conviction." Hubbard v. Taylor, 399 F.3d 150, 166 (3rd Cir.2005)
(quoting Graham v. Connor, 490 U.S. 386, 392 n. 6 (1989)). That is, "[a]s a
matter of law, the Eighth Amendment's protection against cruel and unusual
punishment only applies where a plaintiff is a prisoner during the alleged
incident." Rivera v. Diaz, No. 09-1919, 2010 WL 1542191 at *6 (D.P.R. April

15, 2010) (<u>citing</u> <u>Torres-Viera v. Laboy-Alvarado</u>, 311 F.3d 105, 107 (1st Cir.2002)).

The only claims that would be subject to Eight Amendment scrutiny are those concerning actions or omissions that took place after Diaz-Morales was incarcerated. In his opposition, the Plaintiff posits that the defendants' actions resulted in his wrongful conviction and imprisonment, which in itself consists of a cruel and unusual punishment. <u>See</u> Docket No. 26 at 24-25. However, this District Court has previously dismissed a plaintiff's Eighth amendment claims where he alleged that the police officer defendants' failure to disclose exculpatory evidence resulted in his continued incarceration following his conviction for a murder. <u>See</u> <u>Rivera v. Diaz</u>, 2010 WL 1542191 at *7. Therein, this District Court found that the plaintiff had "fail[ed] to establish an Eighth Amendment claim as his complaint contain[ed] no allegations regarding the conditions of his confinement." <u>Id.</u> (citing <u>Garcia Rodriguez v. Andreu Garcia</u>, 403 F.Supp.2d 174, 178 (D.P.R.2005) (dismissing Eighth Amendment claims where plaintiff failed to make allegations regarding conditions of confinement)).

That being the case here as well, the court is thus forced to **GRANT** the defendants' request that the Plaintiff's Section 1983 claims premised upon violations to his Eighth Amendment rights be dismissed.

**B. Supplemental State Law Claims**

Finally, in their motions to dismiss, the defendants argue that insofar as the court should dismiss the federal claims, so should the Commonwealth law claims be dismissed. However, as discussed above, the Plaintiff has pleaded a plausible Fourth Amendment claim of malicious prosecution against the appearing co-defendants. Because Plaintiff's state-law claims arise out of the same nucleus of operative facts as his claims under 42 U.S.C. § 1983, it is in the interest of judicial efficiency that this court retain jurisdiction over the supplemental state law claims. <u>See</u> <u>Ortiz-Bonilla v. Federacion de Ajedrez de Puerto Rico, Inc.</u>, 734 F.3d 28, 35 (1st Cir.2013) ("A federal court that exercises federal question jurisdiction over a single claim may also assert supplemental jurisdiction over all state-law claims that arise from the same nucleus of operative facts."). Thus, co-defendants' request that the court dismiss Diaz-Morales' supplemental Commonwealth claims is hereby **DENIED.**

### IV. CONCLUSION

For the reasons stated above, the defendants' motions are hereby **GRANTED IN PART AND DENIED IN PART**. In summary, the court hereby:

1.   **GRANTS** the Plaintiff's request in his opposition and **DISMISSES WITHOUT PREJUDICE** his claims under the Sixth Amendment without prejudice;

2.   **GRANTS** the defendants' request that the Plaintiff's Fourth Amendment claims of *false arrest* be **DISMISSED**;

3.   **DENIES** the defendants' request that the Plaintiff's Fourth Amendment claims of *malicious prosecution* be dismissed;

4.   **DENIES WITHOUT PREJUDICE** co-defendants Rubio-Paredes and Arill-Garcia's request for dismissal on grounds of absolute immunity;

5.   **DENIES WITHOUT PREJUDICE** co-defendant Arill-Garcia's motion to dismiss on grounds of lack of supervisory liability;

6.   **DENIES** the defendants' motion to dismiss the Section 1983 conspiracy claims;

7.   **GRANTS** defendants' request that the Plaintiff's Fourteenth Amendment due process claims be **DISMISSED**;

8.   **GRANTS** the defendants' request that the Plaintiff's Eighth Amendment claims be **DISMISSED**;

9.   **DENIES** defendants' request that the supplemental state law claims be dismissed.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, September 30, 2014.

*S/ JUAN M. PEREZ-GIMENEZ*
JUAN M. PEREZ-GIMENEZ
SENIOR U.S. DISTRICT JUDGE