**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

ROBERT ANEL DIAZ-MORALES,

    Plaintiff,

      v.

SERGIO RUBIO-PAREDES, ET ALS.,

    Defendants.

CIV. NO. 13-1360(PG)

**OPINION AND ORDER**

Before the court is co-defendants Limaris Cruz-Velez, Sergio Rubio-Paredes and Emilio Arill-Garcia's motion for summary judgment (Docket No. 89). For the reasons set forth below, the court **GRANTS IN PART AND DENIES IN PART** the co-defendants' motion.

**I. BACKGROUND**

On May 8, 2013, plaintiff Robert Anel Diaz-Morales (hereinafter "Plaintiff" or "Diaz-Morales") filed the instant action seeking compensatory damages against co-defendants police officer Limaris Cruz-Velez ("Cruz-Velez"), prosecutor Sergio Rubio-Paredes ("Rubio-Paredes"), supervising district attorney Emilio Arill-Garcia ("Arill-Garcia"), and other unknown defendants.[1] As explained in this court's Opinion and Order of September 30, 2014 (Docket No. 53), the facts of this case stem from the assault and murder of Kenia Rosario Viera ("Rosario") during the early dawn hours of October 23rd, 2001. The Plaintiff was eventually charged and found guilty of these crimes by a jury on November 13, 2003, but, the Supreme Court of Puerto Rico vacated this verdict eight and a half years later, on May 9th, 2012.[2]

---

[1]All defendants are sued in their individual capacity. See Docket No. 1.

[2]In our previous opinion and order, the court took judicial notice of the Supreme Court of Puerto Rico's sentence, namely, Pueblo v. Robert Anel Diaz Morales, CC-2006-532 (PRSC May 9, 2012). See Docket No. 53 at page 2. In their reply, the defendants now argue that the court should not take judicial notice of the facts as stated in the PRSC sentence, which the Plaintiff inappropriately relied on to oppose defendants' proposed statements of uncontested facts. See Docket No. 137. The Federal Rules of Evidence provide that courts may only take judicial notice of adjudicative facts that are "not subject to reasonable dispute" because such facts are (1) generally known within the territorial jurisdiction, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(a)-(b). "Absent unusual circumstances, a court may not take judicial notice of the findings of fact contained in another court's order … ." MVM Inc. v. Rodriguez, 568 F. Supp. 2d 158, 164 (D.P.R. 2008) (citing Nadherny v. Roseland

CIV. NO. 13-1360(PG)                                                          Page 2

     The Plaintiff brought the present claim pursuant to 42 U.S.C. § 1983 for
what he claims were violations to his constitutional rights under the Fourth,
Sixth, Eighth and Fourteenth Amendments to the United States Constitution.
These constitutional violations, he claims, stem from the investigation and
prosecution of the assault of Rosario that resulted in her death. See Docket
No. 1. Plaintiff also invoked the court's supplemental jurisdiction over the
claims arising from the alleged violations of his constitutional rights under
the Commonwealth's Constitution and for damages under the Commonwealth's tort
statute, to wit, Article 1802 of the Puerto Rico Civil Code, P.R. LAWS ANN. tit.
31, § 5141. Id.

     On September 30, 2014, the court dismissed several claims upon
defendants' request and only the claims for malicious prosecution under the
Fourth Amendment, the conspiracy claims, and the related supplemental state
law claims remain. See Docket No. 153.

     The defendants now seek summary dismissal of all pending claims (Docket
No. 89), which the Plaintiff opposes (Docket No. 128). Also before the court
is defendants' reply (Docket No. 137).

## II. STANDARD OF REVIEW

     A motion for summary judgment is governed by Rule 56 of the
Federal Rules of Civil Procedure, which entitles a party to judgment if
"the movant shows that there is no genuine dispute as to any material fact

---

Prop. Co., 390 F.3d 44, 51-52 (1st Cir.2004) (citing Int'l Star Class Yacht Racing Ass'n,
146 F.3d 66, 70-71 (2d Cir.1998))). Nevertheless, the court is not prohibited from taking
"judicial notice of the fact that another proceeding took place, or of certain other
undisputable aspects of those proceedings. Thus, courts may take judicial notice of another
court's order for the limited purpose of recognizing the judicial act or the subject matter
of the litigation." MVM Inc., 568 F. Supp. 2d at 164 (citing United States v. Jones, 29 F.3d
1549, 1553 (11th Cir.1994)). Applying this caselaw to the present evidentiary controversy,
the court finds that it may take judicial notice of the fact that the Supreme Court of
Puerto Rico acquitted Diaz-Morales and found that reasonable doubt existed as to Diaz-
Morales' guilt deeming that the credibility of the Commonwealth's main witness was
questionable, that no physical evidence linked Diaz-Morales to the crime scene and that
several omissions and gaps existed in the police's investigation. See Certified Translation
of Pueblo v. Robert Anel Diaz Morales, CC-2006-532 (PRSC May 9, 2012), Docket No. 114.
     Having so ruled, the court differs from the defendants' assertion that the Plaintiff
failed to properly oppose their statements of fact and submit statements of his own because
it inadequately relied on findings of fact from another court, to wit, the Supreme Court of
Puerto Rico. Rule 56(c)(2) of the Federal Rules of Civil Procedure states that "[a] party
may object that the material cited to support or dispute a fact cannot be presented in a
form that would be admissible in evidence." Fed. R. Civ. P. 56. Although the court does not
take judicial notice of the PRSC's findings of fact in its sentence acquitting the
Plaintiff, the defendants cannot plausibly argue that the testimonies and documentary
evidence that supported those very findings cannot be made admissible in the proceedings of
the above-captioned case. The court thus finds that the Plaintiff's objections to
defendants' facts and his own proposed statements of fact were submitted in accordance with
the tenets of the Rule, as amended.

and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To be successful in its attempt, the moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact in the record, see DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir.1997), through definite and competent evidence. See Maldonado-Denis v. Castillo Rodriguez, 23 F.3d 576, 581 (1st Cir.1994). Once the movant has averred that there is an absence of evidence to support the non-moving party's case, the burden shifts to the non-movant to establish the existence of at least one fact in issue that is both genuine and material. See Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir.1990) (citations omitted). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008) (citing Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir.2008)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-250 (1986); Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (stating that an issue is genuine if it can be resolved in favor of either party). In order for a disputed fact to be considered material it must have the potential "to affect the outcome of the suit under the governing law." Sands v. Ridefilm Corp., 212 F.3d 657, 660-61 (1st Cir. 2000) (citing Liberty Lobby, Inc., 477 U.S. at 247-248); Prescott, 538 F.3d at 40 (citing Maymi v. P.R. Ports Auth., 515 F.3d 20, 25 (1st Cir. 2008)).

     If the non-movant generates uncertainty as to the true state of any material fact, the movant's efforts should be deemed unavailing. See Suarez v. Pueblo Int'l, 229 F.3d 49, 53 (1st Cir.2000). Nonetheless, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). However, "summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990).

     At the summary judgment juncture, the court must examine the facts in the light most favorable to the non-movant, indulging that party with all possible inferences to be derived from the facts. See Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir.2002). The court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000). This is so, because credibility determinations, the weighing

CIV. NO. 13-1360(PG)                                                  Page 4

of the evidence, and the drawing of legitimate inferences from the facts are
jury functions, not those of a judge. Id.

### III. DISCUSSION

### A. Section 1983

Section 1983 "provides a remedy for deprivations of rights secured by the
Constitution and laws of the United States when that deprivation takes place
under color of any statute, ordinance, regulation, custom, or usage, of any
State or Territory." Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 924
(1982) (internal quotation marks omitted). To prevail in a Section 1983 claim,
a plaintiff "must allege facts sufficient to support a determination (i) that
the conduct complained of has been committed under color of state law, and
(ii) that [the alleged] conduct worked a denial of rights secured by the
Constitution or laws of the United States." Cepero-Rivera v. Fagundo, 414 F.3d
124, 129 (1st Cir.2005) (quoting Romero–Barceló v. Hernández– Agosto, 75 F.3d
23, 32 (1st Cir.1996)). For Section 1983 liability purposes, "a state employee
generally acts under color of state law when, while performing in his official
capacity or exercising his official responsibilities, he abuses the position
given to him by the State." West v. Atkins, 487 U.S. 42, 49 (1988).

Section 1983 claims require that a plaintiff establish three elements for
liability to ensue: deprivation of a right, a causal connection between the
actor and the deprivation, and state action. See Sanchez v. Pereira–Castillo,
590 F.3d 31 (1st Cir.2009); see also 42 U.S.C. § 1983. The causation element
requires that the plaintiff establish (1) that the actions of the defendant
deprived the plaintiff of a protected right, and (2) "that the defendant's
conduct was intentional, grossly negligent, or amounted to a reckless or
callous indifference to the plaintiff's constitutional rights." Concepción v.
Municipality of Gurabo, 558 F.Supp.2d 149, 162 (D.P.R.2007). Moreover, a
plaintiff must link each particular defendant to the alleged violation of
federal rights. See González–Piña v. Rodríguez, 407 F.3d 425, 432 (1st
Cir.2005). A plaintiff may do so by indicating any "personal action or
inaction [by the defendants] within the scope of [their] responsibilities that
would make [them] personally answerable in damages under Section 1983." Pinto
v. Nettleship, 737 F.2d 130, 133 (1st Cir.1984).

The Plaintiff raises claims of malicious prosecution and conspiracy to
deprive him of his constitutional rights. In their motion, the defendants seek
to dismiss all of Plaintiff's remaining Section 1983 claims pursuant to
several grounds that will be discussed herein.

CIV. NO. 13-1360(PG)                                                          Page 5

### 1. Malicious Prosecution
#### a. Probable Cause

In order to bring a Section 1983 malicious prosecution claim under the Fourth Amendment, a plaintiff shall establish that "the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 101 (1st Cir.2013) (citation and quotation marks omitted). In Hernandez-Cuevas, the First Circuit held that "it is 'self-evident' that 'those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit.'" Id. at 100 (citing Limone v. Condon, 372 F.3d 39, 44-45 (1st Cir.2004) (concluding that "the right not to be framed by law enforcement agents was clearly established in 1967")).

The defendants seek the dismissal of the Plaintiff's malicious prosecution claims against them because they acted upon probable cause. In fact, the defendants assert that "the instant action hinges over the existence of probable cause," Docket No. 89 at page 8, that is, the second element of the malicious prosecution claim. In support of this contention, the defendants list the series of events that led to the crime, which stemmed from their investigation. See id. at 10-15. The defendants offer these findings as statements of uncontested fact, most of which are based on the testimony of Jose Luis Delgado ("Delgado"), a co-author of the crime and an admitted heroin user. Id. The defendants also argue that the Commonwealth court's finding of probable cause to arrest and charge the Plaintiff and the jury's guilty verdict validates their assessment. See id. at page 16.

In his opposition, the Plaintiff disputes the accuracy and reliability of all of the defendants' purported facts. In particular, he claims that Delgado was an unreliable witness to begin with insofar as he was a drug addict with a third grade special education level; gave different accounts of events that included several discrepancies; was under the influence of heroin during the commission of the crime, as well as during the course of his multiple interviews with police officer Cruz; and, physically identified the Plaintiff as a co-author of the crime only after his [the Plaintiff's] arrest. See Docket No. 128 at pages 10-13. In addition, the Plaintiff identifies several reckless omissions in the investigation. Firstly, the Plaintiff points our attention to the investigating officers' failure to verify the identity of another individual that shared the Plaintiff's nickname, which Delgado used

CIV. NO. 13-1360(PG)                                                    Page 6

to identify the co-author of the crime against Rosario. Instead, the Plaintiff contends Cruz obstinately and irresponsibly focused on him as the suspect. Second, the Plaintiff asserts the police failed to investigate the origin and the pattern of the phone calls made from Rosario's mobile phone, which was found in the Plaintiff's possession. However, Diaz-Morales repeatedly claimed he bought it from someone off the street days after Rosario's assault, a version that was verifiable from first-hand sources. Finally, Diaz-Morales sustains that during an interview in the presence of both Rubio and Arill, Cruz threatened to "make him pay" for being unable to identify the person who sold him Rosario's mobile phone. Id. at page 17.

Regarding the finding of probable cause in the context of a malicious prosecution claim under the Fourth Amendment, the First Circuit has held that "[p]robable cause exists if the facts and circumstances within the relevant actors' knowledge and of which they had reasonably reliable information would suffice to warrant a prudent person in believing that a person has committed or is about to commit a crime." Burke v. Town Of Walpole, 405 F.3d 66, 80 (1st Cir. 2005) (quotation marks omitted) (citing Roche v. John Hancock Mutual Life Ins. Co., 81 F.3d 249, 254 (1st Cir.1996)). "In determining whether the officer had probable cause, we must view the circumstances from the perspective of a reasonable person in the position of the officer." Holder v. Town Of Sandown, 585 F.3d 500, 504 (1st Cir. 2009) (citing Roche, 81 F.3d at 255). "The test for probable cause does not require the officers' conclusion to be ironclad, or even highly probable. Their conclusion that probable cause exists need only be reasonable." Town Of Sandown, 585 F.3d at 504 (citing Acosta v. Ames Dep't Stores, 386 F.3d 5, 11 (1st Cir.2004)).

"If reasonable grounds to arrest exist, probable cause is established and there is no constitutional duty to continue to investigate further." Afreedi v. Bennett, 517 F. Supp. 2d 521, 533 (D. Mass. 2007) (citing Franco-de Jerez v. Burgos, 876 F.2d 1038, 1042 (1st Cir.1989)). In fact, the First Circuit has "disclaimed any unflagging duty on the part of law enforcement officers to investigate fully before making a probable cause determination." Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 11 (1st Cir. 2004). Nevertheless, while the First Circuit has "recognized that such a duty may arise in highly idiosyncratic circumstances, see, e.g., B.C.R. Transport, 727 F.2d at 10-11, [the First Circuit] [has] made it clear that an officer normally may terminate her investigation when she accumulates facts that demonstrate sufficient probable cause." Acosta, 386 F.3d at 11. See also Town Of Sandown, 585 F.3d

at 505 ("[We] have made it clear that an officer normally may terminate [his] investigation when [he] accumulates facts that demonstrate sufficient probable cause.").

Notwithstanding the foregoing, in B.C.R. Transport Co. v. Fontaine, 727 F.2d 7 (1st Cir.1984), over thirty years ago the First Circuit rejected the broad proposition that probable cause necessarily existed because a warrant had been obtained based upon information supplied by an alleged victim. See id.; Acosta, 386 F.3d at 8. Instead, the Court determined that the probable cause inquiry "invariably depends on the particular facts and circumstances of that case … ." B.C.R., 727 F.2d at 10. The Court thus concluded that sufficient evidence existed to find that the arresting officers acted without probable cause because they relied on the testimony of an alleged victim that was a drifter, incoherent and sounded as if he was on drugs, coupled with the fact that the officer failed to exhaust first-hand sources of information readily available to him. Id. at 10-11. As a matter of fact, "subsequent First Circuit decisions have read B.C.R. to stand for the proposition that an officer may have a duty to investigate further before making an arrest on the basis of an 'incoherent' or 'raving' individual's allegations … ." Cullen v. Janvrin, No. 14-CV-110-PB, 2015 WL 7312886, at *7 (D.N.H. Nov. 19, 2015) (citing Holder, 585 F.3d at 506; Acosta, 386 F.3d at 8).

In the case at hand, the facts known - and that should have been known - to co-defendant Cruz, and any other investigating officer, at the time of the arrest are in dispute. "The only relevant facts are those known to the officer. When these facts are in reasonable dispute, the fact-finder must resolve the dispute." Town Of Sandown, 585 F.3d at 504 (citing Bolton v. Taylor, 367 F.3d 5, 7 (1st Cir.2004)). To that effect, the plaintiff and the defendants offer differing versions. But examining the purported facts in the light most favorable to the Plaintiff pursuant to the applicable standard, we find he has set forth a credible claim that the investigating officers in Rosario's assault and murder case lacked probable cause to believe that Diaz-Morales committed the crimes in question. "The questions that remain are fact-sensitive, and the answers are not so apparent that we can decide them without the benefit of additional factfinding." United States v. Tanguay, 787 F.3d 44, 54 (1st Cir. 2015). Therefore, the factual disputes surrounding the circumstances of Diaz-Morales' arrest prevent this court from summarily dismissing his Fourth Amendment malicious prosecution claim. Accordingly, the defendants' request that these claims be dismissed is hereby **DENIED.**

CIV. NO. 13-1360(PG)                                                    Page 8

### b. Co-defendant Arill

In their motion for summary judgment, the defendants request that the claims for malicious prosecution against co-defendant Arill be dismissed because he did not participate in the investigation of the charges against the Plaintiff, only the prosecution. See Docket No. 89 at page 9. By the same token, Arill also claims that Plaintiff has failed to come forth with evidence of any constitutional violation on his part that would give rise to a claim of supervisor liability. Id. at pages 31-35.

In response, the Plaintiff contends Arill was present during the interview wherein Cruz and Rubio threatened him with pursuing charges against him just for being unable to identify the individual who sold him Rosario's mobile phone. Plaintiff also notes Arill's admission in his statement of uncontested facts that Rubio kept him informed of the progress of the investigation regarding Rosario's assault and murder, of which he was eventually accused of. See Docket No. 128 at page 19; *Defendants' Statement of Uncontested Facts,* Docket No. 87, ¶ 352.

"[S]upervisory liability under section 1983 cannot arise solely on the basis of respondeat superior." Grajales v. Puerto Rico Ports Authority, 682 F.3d 40, 47 (1st Cir.2012) (citing Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 502 (1st Cir.2011)). "Section 1983 does not impose purely supervisory liability; it aims at persons who have actually abused their positions of authority, and hence only persons who were directly involved in the wrongdoing may be held liable." Cordero-Suarez v. Rodriguez, 689 F.3d 77, 82 (1st Cir.2012) (internal citations and quotation marks omitted).

Therefore, in the context of Section 1983 actions, supervisory liability may attach in one of two ways: "either the supervisor may be a primary violator or direct participant in the rights-violating incident, or … if a responsible official supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation." Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir.2009) (internal citations and quotation marks omitted). "[T]he plaintiff in a Section 1983 action must show an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization, … between the actor and the underlying violation." Id. at 49 (internal citations and quotation marks omitted).

CIV. NO. 13-1360(PG)                                                   Page 9

     "After Iqbal, … [the First Circuit] [has] stressed the importance of showing a strong causal connection between the supervisor's conduct and the constitutional violation." Ramirez-Lluveras v. Rivera-Merced, 759 F.3d 10, 19 (1st Cir.2014) (citations omitted)). In addition, "the plaintiff must show that the official had actual or constructive notice of the constitutional violation." Feliciano-Hernandez v. Pereira-Castillo, 663 F.3d 527, 533 (1st Cir.2011) (citations and quotation marks omitted).

     Arill denies having partaken in the investigation of the crimes against Rosario. However, the court finds that Arill's actual involvement and participation in the investigation - or lack thereof - is a matter of credibility the court cannot make at this stage. In addition, it cannot be ascertained at this point whether Arill displayed deliberate indifference in the supervision of Rubio and/or whether he was on notice of the claimed constitutional violations against the Plaintiff. Some purported facts on record, such as his knowledge of the progress of the investigation and his alleged presence during one of Plaintiff's interviews, throw shade onto Arill's purported version. Answering these questions call for "'[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts' - all tasks for the jury, not the judge." Garcia-Gonzalez v. Puig-Morales, 761 F.3d at 99 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Rodriguez v. Municipality of San Juan, 659 F.3d 168, 175 (1st Cir.2011)).

     Pursuant to the foregoing, the court hereby **DENIES** co-defendant Arill's request that the malicious prosecution claim be dismissed against him.

## B. Absolute and Qualified Immunity

### 1. Prosecutorial Immunity (Absolute Immunity)

     The defendants move to dismiss the claims against prosecutors Rubio and Arill arguing that any claim against them that arises from the judicial proceedings is barred by absolute immunity. Rubio and Arill also add that the complaint is silent as to the performance of their duties as attorneys of the State during the criminal proceedings against Diaz-Morales. See Docket No. 89 at pages 17-20. In response, the Plaintiff opposes the dismissal of the claims against these two. Diaz-Morales posits that these defendants, despite being prosecutors, cannot be deemed immune for the investigative conduct they engaged in, the performance of which gives rise to his claims. See Docket No. 128 at pages 21-26.

"Absolute immunity applies to a narrow swath of public officials, including … 'prosecutors performing acts intimately associated with the judicial phase of the criminal process,' … . " Goldstein v. Galvin, 719 F.3d 16, 24 (1st Cir.2013) (citations omitted). For example, "[p]rosecutors … are absolutely immune for actions, taken as advocates for the State, which are closely associated with the judicial process such as initiating and pursuing a criminal prosecution." Knowlton v. Shaw, 704 F.3d 1, 5 (1st Cir.2013) (citing Imbler v. Pachtman, 424 U.S. 409, 430–31 & n. 33 (1976); Burns v. Reed, 500 U.S. 478, 479 (1991)). "The protection afforded by an absolute immunity endures even if the official acted maliciously and corruptly in exercising his judicial or prosecutorial functions." Goldstein, 719 F.3d at 24 (internal citations and quotation marks omitted).

"In determining whether an official qualifies for absolute immunity, an inquiring court must examine the particular functions that the official performs." Goldstein, 719 F.3d at 24 (citing Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993)). That is, in considering whether absolute immunity attaches to an official's conduct, we look  to the nature of the function performed, not the identity of the actor who performed it. See Knowlton, 704 F.3d at 5 (citations omitted). However, "[d]eciding where to draw the line between such immunized prosecutorial advocacy and conduct that is, for example, exclusively investigative or administrative is not always easy." Diaz-Colon v. Fuentes-Agostini, 786 F.3d 144, 150 (1st Cir. 2015). The burden of proving their actions warrant that protection falls on the officials claiming the immunity. See id.

The Plaintiff here concedes that the claims against the prosecutor defendants stem from their participation in the investigation of the criminal charges filed against him and their administrative duties during such investigation. For these, only qualified immunity would be available. "Prosecutors acting as advocates of the state are provided with absolute immunity, while actions taken as an investigator are only protected through qualified immunity." Diaz-Colon v. Toledo-Davila, 922 F.Supp.2d 189, 207 (D.P.R. 2013) (citing Buckley, 509 U.S. at 273). See also Buckley v. Fitzsimmons, 509 U.S. 259, 274 (1993) (no immunity for fabricating evidence before probable cause established); Burns v. Reed, 500 U.S. 478, 496 (1991) (no immunity for giving advice to police during investigation). Because the Plaintiff does not seek damages for actions taken in the performance of their prosecutorial duties, co-defendants Rubio and Arill's request for the

dismissal of the claims against them on absolute immunity grounds must be **DENIED.**

### 2. Qualified Immunity

The defendants also assert the claims against them are barred by qualified immunity. See Docket No. 89 at pages 20-31. The main grounds in support of their argument is that they acted reasonably in relying on the results of their investigation and in believing Delgado's testimony implicating the Plaintiff. See id. at page 30. In response, the Plaintiff opposes the defendants' immunity defense. Diaz-Morales points to the dispute surrounding the facts the defendants relied on to pursue the charges against him, especially the inconsistencies in Delgado's multiple versions of what transpired on the night of Rosario's assault. See Docket No. 128 at pages 26-29.

"Long-standing principles of constitutional litigation entitle public officials to qualified immunity from personal liability arising out of actions taken in the exercise of discretionary functions." Glik v. Cunniffe, 655 F.3d 78, 81 (1st Cir. 2011). "In assessing qualified immunity, … [f]irst, we must decide whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right. … Second, assuming a constitutional violation exists, we determine whether the right was clearly established at the time of the defendant's alleged violation." Fernandez-Salicrup v. Figueroa-Sancha, 790 F.3d 312, 325 (1st Cir. 2015) (internal citations and quotation marks omitted). Two inquiries follow the second element of the analysis:

> (a) whether the legal contours of the right in question were sufficiently clear that a reasonable officer would have understood that what he [or she] was doing violated the right, and (b) whether in the particular factual context of the case, a reasonable officer would have understood that his [or her] conduct violated the right.

Fernandez-Salicrup, 790 F.3d at 325-26 (citing Mlodzinski v. Lewis, 648 F.3d 24, 32-33 (1st Cir.2011)). If all questions are answered in the affirmative, then qualified immunity is not available. See Mihos v. Swift, 358 F.3d 91, 110 (1st Cir.2004).

As discussed above, the court found that the Plaintiff set forth a sufficiently credible claim that the investigating officers lacked probable cause to believe that he committed the assault that resulted in Rosario's death. Thus, there is a genuine issue of material fact over whether the

defendants' actions violated Diaz-Morales' constitutional right under the Fourth Amendment.

Moving on to the second prong of the analysis, the defendants concede that it is clearly established that arrests be based on probable cause, Docket No. 89 at page 21, and that investigating officers cannot fabricate evidence in order to procure an arrest warrant against an individual, id. page 22. The defendants also agree that "[i]t is also beyond peradventure that arrests procured on the basis of material false statements or testimony given in reckless disregard for the truth violates the Fourth Amendment." Id. at pages 21-22.

Therefore, in view of the arguments the defendants raise in their motion for summary judgment, the analysis here turns on the objective reasonableness of the defendants' actions. "The objective reasonableness inquiry is highly fact specific, …  and often requires [an] examination of the information possessed by the defendant officials." Diaz-Garcia v. Surillo-Ruiz, No. CIV. 13-1473 FAB, 2015 WL 3866686, at *27 (D.P.R. June 23, 2015) (internal quotation marks omitted) (citing Swain v. Spinney, 117 F.3d 1, 9-10 (1st Cir.1997); Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir.2009); Kelley v. LaForce, 288 F.3d 1, 7 (1st Cir.2002)). "However, whether or not a reasonable officer, similarly situated, would have understood that [his/her] actions violated this right is a fact-intensive question." Fernandez-Salicrup, 790 F.3d at 326. As previously stated, the facts known, or that should have been known to the investigating officers at the time of the Plaintiff's arrest are in dispute. "These are questions for a factfinder, and until they are answered, we are unable to determine, as a matter of law, whether [defendants'] conduct was deficient that no reasonable officer could have made the same choice under the circumstances." Id. at 326 (citing Estate of Bennett v. Wainwright, 548 F.3d 155, 168 (1st Cir.2008))(internal quotation marks omitted).

The factual dispute surrounding the investigation of Rosario's assault prevent this court from evaluating the qualified immunity question. Accordingly, the defendants' request for dismissal of the claims against them on grounds of qualified immunity is hereby **DENIED.**

## C. Conspiracy

Regarding the Plaintiff's claim that the defendants conspired to deprive him of his constitutional rights in violation of Section 1983, the defendants argue that dismissal is appropriate insofar as the Plaintiff failed to put

forth any evidence to sustain this particular claim. See Docket No. 89 at pages 35-36. In response, the Plaintiff concisely spells out the elements of a Section 1983 conspiracy claim and simply states that "the facts further warrant this question be also presented to the jury for adjudication." Docket No. 128 at page 121.

A civil rights conspiracy under Section 1983 is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." Estate of Bennett v. Wainwright, 548 F.3d 155, 178 (1st Cir.2008) (citing Earle v. Benoit, 850 F.2d 836, 844 (1st Cir.1988)). "In order to make out an actionable conspiracy under section 1983, a plaintiff has to prove not only a conspiratorial agreement but also an actual abridgment of some federally-secured right." Nieves, 241 F.3d at 53 (citations omitted).

> A civil rights conspiracy as commonly defined is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages."

Estate of Bennett v. Wainwright, 548 F.3d 155, 178 (1st Cir. 2008) (quoting Earle v. Benoit, 850 F.2d 836, 844 (1st Cir.1988)).

As previously stated, material facts are in dispute as to whether or not the defendants deprived him of a right secured by the Constitution. However, the court finds that the Plaintiff simply failed to set forth any proof of a conspiratorial agreement on the part of the defendants, or even adequately develop an argument in support of his claim. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." Glob. NAPs, Inc. v. Verizon New England, Inc., 706 F.3d 8, 16 (1st Cir. 2013) (citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)). The court will not do counsel's work. "[S]ummary judgment may … be appropriate on a conspiracy claim where the nonmoving party rests merely on conclusory allegations." Estate of Bennett, 548 F.3d at 178.

In accordance with the foregoing, the court **GRANTS** the defendants' motion for summary judgment with respect to the Section 1983 conspiracy claims.

CIV. NO. 13-1360(PG)                                                          Page 14

**D. Supplemental State Law Claims**

The defendants request that the supplemental state law claims be dismissed because the Plaintiff's causes of action under federal law fail. See Docket No. 89 at page 37. However, as held *supra*, the Plaintiff's Fourth Amendment malicious prosecution claim against all defendants has survived summary judgment. Because Plaintiff's state-law claims arise out of the same nucleus of operative facts as his claims under 42 U.S.C. § 1983, it is in the interest of judicial efficiency that this court retain jurisdiction over the supplemental state law claims. See Ortiz-Bonilla v. Federacion de Ajedrez de Puerto Rico, Inc., 734 F.3d 28, 35 (1st Cir.2013) ("A federal court that exercises federal question jurisdiction over a single claim may also assert supplemental jurisdiction over all state-law claims that arise from the same nucleus of operative facts."). Thus, defendants' request that the court summarily dismiss Diaz-Morales' supplemental state-law claims is necessarily **DENIED.**

**E. UNKNOWN DEFENDANTS**

The defendants also seek the dismissal of the claims against the unknown defendants pursuant to Rules 4(m) and 12(b)(5) of the Federal Rules of Civil Procedure because they were never identified and timely served with process. See Docket No. 89 at page 37. The Plaintiff did not oppose the request.

"Under Fed.R.Civ.P. 4(m), a district court may dismiss a complaint without prejudice as to a particular defendant if the plaintiff fails to serve that defendant within 120 days after filing the complaint." Figueroa v. Rivera, 147 F.3d 77, 83 (1st Cir. 1998). On the other hand, Federal Rule of Civil Procedure 12(b)(5) allows a party to assert a defense of insufficient service of process. Fed.R.Civ.P. 12(b)(5).

The above-captioned claim was filed almost three years ago. The record discloses no attempt by the Plaintiff to identify or serve any of the anonymous defendants additionally responsible for his alleged constitutional violations. "[A] district court otherwise prepared to act on dispositive motions is not obligated to 'wait indefinitely for [the plaintiff] to take steps to identify and serve … unknown defendants.'" Figueroa v. Rivera, 147 F.3d 77, 83 (1st Cir. 1998) (quoting Glaros v. Perse, 628 F.2d 679, 685 (1st Cir.1980)).

Plaintiff has had ample time to identify any additional defendant, amend his complaint and perform the required service of process, but has failed to

do so or shown good cause for the omission. The court therefore **GRANTS** the defendants' request and dismisses the claims against all unknown defendants.

### IV. CONCLUSION

For the reasons stated above, the defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART,** and the Plaintiff's claims against the unknown defendants and the Section 1983 conspiracy claims are hereby **DISMISSED.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, March 21, 2016.

*S/ JUAN M. PEREZ-GIMENEZ*
JUAN M. PEREZ-GIMENEZ
SENIOR U.S. DISTRICT JUDGE